FILED
CHARLOTTE, NC

OCT 20 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BIKRAMJIT AHLUWALIA<br>a/k/a Biku<br>a/k/a internetteam5000<br>a/k/a Don Bonsa<br>a/k/a Bobby | ) | DOCKET NO. 3:25-CR-282-MOC<br><br>**FACTUAL BASIS** |

NOW COMES the United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis is filed pursuant to Local Criminal Rule 11.2 and does not attempt to set forth all of the facts known to the United States at this time. By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement, and that the facts set forth in this Factual Basis are sufficient to establish all of the elements of the crime(s). The parties agree not to object to or otherwise contradict the facts set forth in this Factual Basis.

Upon acceptance of the plea, the United States will submit to the Probation Office a "Statement of Relevant Conduct" pursuant to Local Criminal Rule 32.4. The defendant may submit (but is not required to submit) a response to the Government's "Statement of Relevant Conduct" within seven days of its submission. The parties understand and agree that this Factual Basis does not necessarily represent all conduct relevant to sentencing. The parties agree that they have the right to object to facts set forth in the presentence report that are not contained in this Factual Basis. Either party may present to the Court additional relevant facts that do not contradict facts set forth in this Factual Basis.

1. "Pop-ups" were computer coding scripts of a malicious nature, embedded in various internet websites, that temporarily locked computer users' computers and displayed a message directing the users to contact a toll-free number of technical assistance for removal. Pop-ups locked computers by: (1) depriving the computer user of the ability to close the pop-up; (2) causing the pop-up to regenerate itself if the user closed the pop-up; and/or (3) depriving the computer user of the ability to resume normal computer use through their web browser or other applications, among other methods. Pop-ups also displayed false representations of diagnosing systemic network infirmities, including viruses and instances of unauthorized network intrusions,

all in an effort to trick victims into seeking costly technical assistance from call centers through the number displayed in the pop-ups.

2. "Tech support fraud" was a type of internet fraud that involved material misrepresentations of viruses or other network or computer infirmities on victims' computers in order to trick the victims into paying for unnecessary technical support for non-existent computer issues. Victims were generated through the use of pop-ups. Companies that created and distributed these pop-ups are generally known as publishers. Victim call traffic generated by the pop-ups were sold by the publishers to individual call centers. Once a victim experienced a pop-up and made contact with a call center through the number provided in the pop-up, a call center employee then defrauded the consumer under the pretense of providing technical assistance to resolve any number of fictitious issues with the victim's computer that were fraudulently identified by the pop-up and the call center. Tech support fraud required the use of call-routing services. These entities operated "pay-per-call" platforms that tracked tech support fraud calls from their points of origin (the victims) to the destination phone numbers (the call centers), recording the calls along the way.

3. Defendant Bikramjit AHLUWALIA was an owner and manager of Digital Marketing Support Services ("DMSS"), a publisher of tech support fraud pop-ups. Between 2016 and 2021, Defendant, through DMSS, executed an international tech support fraud conspiracy that targeted United States citizens. Defendant deployed malicious tech support fraud pop-ups across the internet on domains maintained by DMSS. Defendant used these pop-ups to render victims' computers temporarily inoperable and to display misleading messages of viruses or other systemic infirmities. Designed with varying levels of maliciousness, some pop-ups masqueraded as "Blue Screens of Death," or BSOD for short. Other pop-ups were known as, among other things: (1) "porn pops," which flashed messages suggesting that the user's perusal of pornographic websites had resulted in the installation of harmful viruses; (2) "iOS pops," which misrepresented computer issues for Apple devices; and (3) "Desktop" or "Windows" pops, which misrepresented that Microsoft had remotely diagnosed an issue with victims' computers. Defendant employed malicious pop-ups that misrepresented technical issues related to the services, software, and devices provided and/or sold by Microsoft or other legitimate computer software companies. Defendant would also configure some pop-ups to circumvent security protocols put into place by web browsers like Google Chrome. Regardless of the substance or configurations of the individual pop-ups, the end goal was the same: to trick victims into purchasing unnecessary tech support services based on misrepresentations regarding the presence of computer viruses or computer or network infirmities. The pop-ups contained instructions for the computer users to call a phone number for computer repair: numbers that routed the calls to call centers. Due to the pop-up misrepresentations and the computer use disruptions caused by the pop-ups, victims would call the phone numbers displayed by the pop-ups, which would connect them to individual call centers, where technicians would defraud the victims under the false pretense of providing legitimate technical support services. DMSS sold this tech support fraud victim call traffic to call centers around the world.

4. To proliferate pop-ups over the internet, DMSS purchased thousands of website domains. The pop-ups were embedded in those websites and appeared to computer users that visited them. To ensure the malicious pop-ups worked as intended, *i.e.*, effectively locked victims' computers and displayed the correct phone numbers, Defendant often viewed and tested DMSS's malicious pop-ups.

5. Various independent call centers purchased victim call traffic from DMSS. Most of DMSS's call center clients were located in the Republic of India. One DMSS call center client was operated by individuals located in the Western District of North Carolina. Call centers paid Defendant and DMSS to cause victims to believe that their computers required technical support through the use of malicious pop-ups. Call center employees relied on the misrepresentations displayed in the pop-ups to further misrepresent the presence of various computer infirmities on the victims' computers, in order to trick victim callers into purchasing unnecessary tech support services from the call centers for hundreds or even thousands of dollars. The call center employees would often also misrepresent to victims that they were employed by, or formally associated with, legitimate computer software companies, when in fact they were not. Victims throughout the United States were defrauded of tens of millions of dollars by call centers on calls generated by the pop-ups and routed to the call centers by Defendant and his co-conspirators. As a result of generating victim call traffic to call centers located all over the world, Defendant facilitated the victimization of thousands of computer users throughout the United States. DMSS and Defendant made millions of dollars in revenue from the tech support fraud scheme.

6. DMSS received payments from call centers for the victim call traffic into DMSS's Hong Kong-based bank accounts. During the relevant time period, DMSS received at least $31,275,983 in proceeds from the tech support fraud scheme. Defendant's share of the fraud proceeds was transferred from DMSS bank accounts to accounts he controlled in Dubai, United Arab Emirates or the United Kingdom.

7. From at least in or about April of 2016, through on or about March 17, 2021, in Mecklenburg County (among others) in the Western District of North Carolina and elsewhere, AHLUWALIA did knowingly and intentionally combine, conspire, confederate, and agree with a business partner, DMSS employees, and with others known and unknown, to commit the offense of wire fraud, a violation of Title 18, United States Code, Section 1343, all in violation of Title 18, United States Code, Section 1349. Defendant joined and participated in the conspiracy while knowing its unlawful purpose and with the intent to further its unlawful purpose.

8. It was a part of and an object of the conspiracy that the Defendant and others known and unknown, with the intent to defraud, having devised the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to wit, a tech support fraud scheme, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

9. From at least in or about April of 2016, through on or about March 17, 2021, in Swain, Catawba, Mecklenburg, and Buncombe Counties (among others) in the Western District of North Carolina and elsewhere, AHLUWALIA knowingly and intentionally devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, to wit, the tech support fraud scheme.

10. On or about the dates set forth below, in the Western District of North Carolina and elsewhere, AHLUWALIA, for the purpose of executing the tech support fraud scheme, did knowingly and intentionally transmit, and cause to be transmitted, by means of wire communication in interstate and foreign commerce by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds, each transmission constituting a separate count of wire fraud as follows:

| Count | Approximate Date | Victim | Victim Location | Transmission |
|---|---|---|---|---|
| 2 | 02/20/2017 | D.M. | Bryson City, NC | Telephone call |
| 3 | 02/23/2017 | R.S. | Matthews, NC | Telephone call |
| 4 | 10/24/2017 | D.C. | Chattanooga, TN | Skype message between Individuals 2 and 3 |
| 5 | 10/24/2017 | Y.C. | Homestead, FL | Skype message between Individuals 2 and 3 |
| 6 | 10/24/2017 | W.W. | Mint Hill, NC | Telephone call |
| 7 | 12/1/2017 | T.M. | Hickory, NC | Telephone call |
| 8 | 04/03/2018 | J.B. | Matthews, NC | Telephone call |
| 9 | 04/06/2018 | M.S. | Charlotte, NC | Telephone call |

All in violation of Title 18, United States Code, Section 1343.

11. From at least in or about April of 2016, through on or about March 17, 2021, in Mecklenburg County (among others) in the Western District of North Carolina and elsewhere, AHLUWALIA did knowingly and intentionally combine, conspire, confederate, and agree with a business partner, DMSS employees, and with others known and unknown, to knowingly cause the transmission of a program, information, code, and command, and, as a result of such conduct, intentionally cause damage without authorization to a protected computer, and cause loss to one or more persons during a 1-year period from Defendant's course of conduct affecting protected computers aggregating to at least $5,000 in value, and cause damage affecting 10 or more protected computers during a 1-year period, in violation of Title 18, United States Code, Sections 1030(a)(5)(A) and (c)(4)(B). This was in violation of Title 18, United States Code, Section 371.

12. Defendant committed many overt acts in furtherance of the conspiracy referenced in Paragraph 11 to transmit code to intentionally cause damage without authorization to a protected computer. Such overt acts occurred between April 2016 and March 2021, each time Defendant added malicious pop-up code into a domain registered by DMSS, which Defendant knew would

display a pop-up to a victim that would "lock" the victim's operating system by not allowing the victim to close the pop-up and resume normal web browsing or computer use activity, thereby rendering the computer inoperable. This occurred with respect to victim R.S. of Matthews, North Carolina, on or about February 23, 2017.

13. DMSS caused at least $30,000,000 in losses to thousands of victims across the United States. The overall conspiracy, to the extent to which Defendant was involved, caused losses greater than $25,000,000 but less than $65,000,000.

14. The conspiracy victimized more than ten individuals.

15. A substantial part of the fraudulent scheme was committed from outside the United States.

RUSS FERGUSON
UNITED STATES ATTORNEY

MATTHEW WARREN
ASSISTANT UNITED STATES ATTORNEY

Defendant's Counsels' Signature and Acknowledgment

I have read this Factual Basis, the Bill of Information, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Information, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis.

Signed by:
Holly Pierson
325D11E13A2E429...
Holly Pierson, Attorney for Defendant

DATED: 10/10/2025

Brian Cromwell, Attorney for Defendant

DATED: 10/8/25