IN THE UNITED STATES DISTRICT COURT
THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

CASE NO. 3:25-CR-282-SCR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | UNITED STATES' MOTION FOR |
| v. | ) | ALTERNATIVE VICTIM NOTIFICATION |
| | ) | UNDER 18 U.S.C. § 3771(d)(2) |
| | ) | |
| BIKRAMJIT AHLUWALIA | ) | |

The United States of America, by and through the United States Attorney for the Western District of North Carolina Russ Ferguson, hereby respectfully moves this Court, pursuant to Title 18, United States Code, Section 3771(d)(2), for authorization to employ the victim notification procedures described below, in lieu of those prescribed by section 3771(a), (b) and (c), on the grounds that the number of crime victims in this case makes it impracticable to accord all of the crime victims the rights described in subsection 3771(a).

The Crimes Victims' Rights Act ("the Act"), codified at 18 U.S.C. § 3771, provides certain rights to victims in federal criminal proceedings. Among these rights is the right to "reasonable, accurate, and timely notice" of public court proceedings. 18 U.S.C. § 3771(a). The Act requires "[o]fficers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation and prosecution of crime make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection [3771](a)," 18 U.S.C. § 3771(c)(1), and it instructs the Court to "ensure that the crime

victim is afforded" those rights. 18 U.S.C. § 3771(b). The Act defines a crime victim as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." 18 U.S.C. § 3771(e). Importantly, the Act recognizes that for crimes involving multiple victims, the Court has discretion to adopt procedures to accord victim rights without unduly interfering with the criminal proceedings. Thus, 18 U.S.C. § 3771(d)(2) provides:

> In a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims the rights described in subsection (a), the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings.

The Act places no limitations on the alternative procedures which a Court may fashion other than that the procedures be reasonable to effectuate the Act and that they not unduly complicate or prolong the proceedings. *Id*.

Defendant, Bikramjit Ahluwalia, has pleaded guilty to conspiracy to commit wire fraud, wire fraud, and conspiracy to commit computer fraud. Docs. 1, 2. Defendant conspired with others to enrich himself through technical support fraud. The technical support fraud conspiracy involved the use of malicious pop-ups to trick computer users into believing that their computers or internet networks were experiencing errors, viruses, intrusions, or other infirmities which required technical support to fix. The pop-ups "froze" victim computers, or rendered victim computers temporarily inoperable. The pop-ups directed the victims to contact a technical support center through phone numbers listed in the pop-ups. Those phone numbers directed the victims to independent call centers located in the Republic of India, who proceeded to further misrepresent the presence of computer or network infirmities in order to cause the victims to pay for non-existent technical support to fix the fictitious computer or network issues identified in the pop-ups. In reality, the pop-ups were designed by the pop-up publishers to trick computer users

into contacting the call centers for fictitious issues.

Ahluwalia, through a company called DMSS, created and sold the malicious pop-up call traffic to call centers at set rates per call, such as $15. In other words, call centers paid DMSS for call traffic comprised of victims that believed that their computers needed technical support. Call records reflect at least 1,837,912 calls resulted from DMSS pop ups. Thousands of victims paid hundreds or even several thousand dollars each to various call centers on calls generated by DMSS pop-ups. The actual victim transactions occurred between victims and the various call centers to which they were routed. During this investigation, the government seized call traffic records from one of the routing platforms used by DMSS, which routed the calls from the pop-ups to the call centers. These records reflect millions of technical support fraud calls to various call centers, including the date of the call, the phone numbers involved, and often recordings of the calls themselves.

Based on the limited data available, it is difficult if not impossible to determine the identities of all of the victims who were successfully defrauded by call centers of technical support fees based on DMSS pop-ups. It should be noted that it may be difficult for victims to identify that they have been victimized by a particular call center because the call centers used various corporate entity names to conduct the transactions. Thus, an alternative victim notification procedure is necessary. Given the volume of call records and the investigative time and resources required to specifically identify victims, it is impracticable for either the government or the Court to accord all of the other victims in this case the notice required by subsection 3771(a). Therefore, due to the large number of victims in this case, the government intends to use the Justice Department's website for large cases, http://justice.gov/largecases/, to direct victims to a case-specific website that will be established by the United States Attorney's

Office for the Western District of North Carolina. The website would provide a summary of the case, information regarding the case's status, and other significant case-related documents, such as the charging documents and plea agreement. The website also would contain an e mail address and telephone number for a Victim Assistance Line through which individual potential crime victims could contact the Department of Justice with questions regarding the case.

This Motion seeks the Court's permission to use this alternative victim notification method to comply with the Act. Following the implementation of this website, the United States will use the phone numbers of any self-identified victims of the fraud scheme to search through the aforementioned call records and attempt to determine if each victim was victimized by a call generated by a DMSS pop-up.

The government has consulted with defense counsel, Holly Pierson and Brian Cromwell, who do not oppose this Motion.

**CONCLUSION**

Based on the foregoing, the government requests the Court grant the motion for alternative victim notification procedures.

Respectfully submitted this 23rd day of March, 2026.

RUSS FERGUSON
UNITED STATES ATTORNEY

Matthew Warren
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street Suite 1700
Charlotte, North Carolina 28202
Telephone: 704.344.6222
E-mail: matthew.warren@usdoj.gov

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies that:

1) No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2) Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting *pro se*) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Dated: March 23, 2026

RUSS FERGUSON
UNITED STATES ATTORNEY

*/s/ Matthew Warren*
Matthew Warren